**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| R.T., a minor, by and through his parents and natural guardians CHUNCHUN TAO and JIE SHAO, **Plaintiff,** | : : : : : | Civil Action No. |
| v. | : : | **Complaint and Jury Demand** |
| ACTS RETIREMENT-LIFE COMMUNITIES, INC., **Defendant.** | : : : : | |

### CIVIL ACTION

Plaintiff, R.T., a minor, by and through his parents and natural guardians Chunchun Tao and Jie Shao (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, brings this civil matter against Acts Retirement-Life Communities, Inc. (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is a minor individual residing in Blue Bell, PA.

3. Upon information and belief, Defendant Acts Retirement-Life Communities, Inc. is a retirement community with a location and corporate headquarters located at 9000 Twin

Silo Drive, Blue Bell, PA 19422.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original

jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under the ADA and the PHRA.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on February 20, 2025, alleging disability discrimination against Defendant.

14. The Charge was assigned a Charge Number 530-2025-02510 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated May 15, 2026.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and within two years of the issuance of the Right to Sue in this matter as it relates to his PHRA claims.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff has the serious health conditions of Autism Spectrum Disorder ("ASD") and Attention Deficit Hyperactivity Disorder ("ADHD") which are considered to be disabilities under the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").

21. The major life activities affected by ASD and ADHD, include, but are not limited to, concentrating, communicating, interacting with others, thinking and processing information in a different way, and spatial awareness.

22. On June 25, 2024, Defendant hired Plaintiff to work part-time in a busser and food preparation role at Defendant's restaurant.

23. Plaintiff was well qualified for his assigned role and performed well

24. Plaintiff's family explicitly notified Roosevelt Joseph, Manager, of Plaintiff's disabilities during his pre-employment interview.

25. Although Plaintiff originally applied for a Server position, Joseph intentionally placed Plaintiff in a busser role rather than a server role because the server role required stronger verbal communication and social interaction skills, skills that are particularly challenging for individuals with ASD.

## THE ALLEGED INCIDENT ON NOVEMBER 15, 2024

26. On November 15, 2024, a female co-worker named Sophia Pitcavage reported to Joseph that Plaintiff had touched her inappropriately.

4

27. Plaintiff was completely unaware of any bodily contact with Pitcavage at the time of the alleged incident.

28. Pitcavage did not scream, complain, react, or otherwise indicate to Plaintiff that any inappropriate contact had occurred during the alleged incident.

29. Plaintiff only became aware of Pitcavage's allegation when Joseph informed him of the report later that same day.

30. Plaintiff denies intentionally touching Pitcavage inappropriately at any time.

31. To the extent any physical contact occurred, Plaintiff recalled that, while walking quickly toward the fruit storage area and deeply focusing on a work task, his right hand, swinging naturally at his side, may have accidentally and inadvertently brushed against Pitcavage as she stood to his right without his notice.

32. However, it remains entirely possible that no physical contact took place at all.

33. Hyperfocus on tasks is a well-documented and common symptom of both ASD and ADHD.

34. To the extent any contact occurred, Plaintiff's intense hyperfocus on his assigned duties contributed directly to his complete unawareness of Pitcavage's proximity.

35. Plaintiff's disabilities, including impaired spatial awareness and difficulty reading social cues, combined with a narrow workspace, made it reasonably possible that to the extent there was any contact with Pitcavage, it was entirely accidental and unintentional.

36. Critically, due to developmental delays secondary to Plaintiff's ASD, Plaintiff displayed no clinical or physiological markers of puberty at the time of the alleged incident, including a complete absence of sexual awareness or drive.

37. Plaintiff is a disciplined, rule-abiding minor with an exemplary record at school and has an active Individualized Education Program ("IEP").

38. Plaintiff's strict, near-rigid adherence to established rules is a well-documented behavioral characteristic associated with his ASD, making the alleged misconduct inherently contrary to his nature.

## THE POLICE INVESTIGATION

39. Pitcavage reported the alleged incident to local police on November 15, 2024.

40. Detective Bealer investigated Pitcavage's allegations and concluded that there was no evidence to support her claim.

41. The police investigation revealed no video footage, no third-party witnesses, and no corroborating evidence of any wrongdoing by Plaintiff.

42. The police closed the matter without filing any charges against Plaintiff.

43. Importantly, Detective Bealer confirmed that he was entirely unaware of Plaintiff's ASD and ADHD diagnoses during his investigation.

44. Despite being aware of Plaintiff's disabilities, Defendant failed to disclose this vital information to law enforcement during its investigation.

## DEFENDANT'S INVESTIGATION

45. Defendant suspended Plaintiff pending an HR investigation on November 16, 2024, the day after Pitcavage's report.

46. Defendant's HR department conducted only one brief interview with Plaintiff, by telephone on November 18, 2024, and made no further attempts to gather additional information or context from Plaintiff or his family.

47. Plaintiff's family submitted multiple emails to Defendant explaining Plaintiff's disabilities and providing analysis of the alleged incident, but Defendant flatly refused to examine or incorporate Plaintiff's disabilities into its evidentiary review.

48. Specifically, Defendant completely failed to consult with any disability specialists or otherwise investigate how Plaintiff's known ASD and ADHD may have contributed to, or explained, the behavior in the alleged incident.

49. Consequently, Defendant's investigation was entirely one-sided and deeply biased, failing to afford Plaintiff a fair, meaningful opportunity to address the allegations in light of his known disabilities.

## DEFENDANT TERMINATED PLAINTIFF

50. On November 22, 2024, Defendant called Plaintiff and terminated his employment based solely on Pitcavage's account, despite the absence of any corroborating evidence.

## PLAINTIFF'S APPEAL

51. On November 25, 2024, Plaintiff's family requested an in-person meeting with Defendant's management and Human Resources to review the incident, as Defendant had not informed Plaintiff or his family of the specific details underlying the allegations or provided any evidence to justify its decision to terminate Plaintiff.

52. Defendant did not respond to Plaintiff's family's request for an in-person meeting.

53. Plaintiff, through his family, filed a timely appeal of Defendant's termination decision.

54. On December 2, 2024, Defendant upheld the termination and emailed Plaintiff an Appeal Response Letter.

55. Defendant did not disclose any corroborating evidence or engage meaningfully with Plaintiff's family regarding Plaintiff's disabilities.

56. Importantly, in its Appeal Response Letter, Defendant escalated its allegations, alleging for the first time that Plaintiff had touched Pitcavage's "groin area" in place of the initial accusation that Plaintiff had "touched her inappropriately".

57. In response, Plaintiff's family reiterated the nature of Plaintiff's disabilities, demanded evidence and requested formal reconsideration of the appeal.

58. Defendant refused this request and asserted that the alleged touching occurred in the "vaginal area", while still providing no corroborating evidence.

### DEFENDANT'S KNOWLEDGE OF PLAINTIFF'S DISABILITIES

59. Defendant was fully aware of Plaintiff's ASD and ADHD diagnoses from the time of Plaintiff's hire in June 2024.

60. Defendant's prior knowledge of Plaintiff's disabilities is confirmed by the fact that Joseph specifically accommodated Plaintiff's communication limitations by assigning him to a busser role rather than a server role.

61. Throughout Plaintiff's employment and prior to the alleged incident, Defendant failed to implement any disability-related workplace guidance or protective workplace policies to properly support and account for his ASD and ADHD within his assigned busser role.

62. Defendant's intentional omission of Plaintiff's disabilities to law enforcement underscores its bad faith, ensuring Detective Bealer investigated the matter without critical information.

63. Defendant failed to take Plaintiff's disabilities into account during its investigation of Pitcavage's allegations, despite being fully aware of those disabilities.

64. Defendant's failure to account for Plaintiff's disabilities during the investigation and termination process constitutes disability discrimination in violation of the ADA and the PHRA.

65. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

66. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

67. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

68. Plaintiff was qualified to perform the job.

69. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

70. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

71. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

72. Plaintiff's disability motivated Defendant's decision to take adverse actions against Plaintiff.

73. The purported reason for Defendant's decision is pretextual.

74. Others similarly situated but outside of Plaintiff's protected class were treated more

favorably.

75. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered

damages as set forth herein.

76. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally

protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra*.

## COUNT II – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

77. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

78. Plaintiff is a "qualified individual with a disability" as that term is defined under the

PHRA because Plaintiff has, or had at all times relevant hereto, disabilities that

substantially limits or limited one or more major life activities or because Plaintiff had a

record of such an impairment or because Plaintiff was regarded as and/or perceived by

Defendant and its agents as being disabled.

79. Plaintiff was qualified to perform the job.

80. Plaintiff was subject to an adverse employment action, including, but not limited to

termination.

81. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse

employment action.

82. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse

employment actions.

83. Plaintiff's disability motivated Defendant's decision to terminate Plaintiff.

84. The purported reason for Defendant's decision is pretextual.

10

85. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

86. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, R.T., a minor, by and through is parents and natural guardians Chunchun Tao and Jie Shao, requests that the Court grant him the following relief against Defendant:

(a)    Compensatory damages;

(b)    Punitive damages;

(c)    Liquidated damages;

(d)    Emotional pain and suffering;

(e)    Reasonable attorneys' fees;

(f)    Recoverable costs;

(g)    Pre and post judgment interest;

(h)    An allowance to compensate for negative tax consequences;

(i)    A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA and the PHRA.

(j)    Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training  programs, policies, practices and programs which provide equal employment opportunities;

(k)    Order Defendant to remove and expunge, or to cause to be removed and expunged,

11

all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: June 29, 2026          By:    */s/David M. Koller*
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

12